IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-1409-D

| | |
|---|---|
| BEVERLY BROWN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CORTEVA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

On October 6, 2023, Beverly Brown ("Brown"), Kenneth Engel ("Engel"), Shirley McNatt ("McNatt"), and Robert Richards ("Richards") (collectively, "plaintiffs") filed a complaint against Corteva, Inc. ("Corteva"), DuPont de Nemours, Inc. ("DuPont"), EIDP, Inc. ("EIDP"), the Chemours Company ("Chemours"), and the Chemours Company FC, LLC ("Chemours FC") (collectively, "defendants") [D.E. 1]. On December 5, 2023, defendants moved to dismiss plaintiffs' complaint for failure to state a claim [D.E. 19] and filed a memorandum in support [D.E. 20]. See Fed. R. Civ. P. 12(b)(6). On December 13, 2023, plaintiffs amended their complaint [D.E. 21]. Plaintiffs allege: (1) negligence, (2) gross negligence, (3) negligence per se, (4) public nuisance, (5) private nuisance, (6) trespass to real property, (7) trespass to chattel, and (8) unfair and deceptive trade practices ("UDTPA"). See [D.E. 21] ¶¶ 83–120. On December 27, 2023, defendants moved to dismiss plaintiffs' amended complaint for failure to state a claim [D.E. 22] and filed a memorandum in support [D.E. 23]. See Fed. R. Civ. P. 12(b)(6). On August 2, 2024, plaintiffs responded in opposition [D.E. 36]. On August 16, 2023, defendants replied [D.E. 37]. As explained below, the court grants defendants' motion to dismiss in part and denies it in part.

Plaintiffs' negligence, gross negligence, private nuisance, and trespass to real property claims survive.

I.

In 1985, McNatt became a resident of Cumberland County. See Am. Compl. [D.E. 21] ¶ 77. McNatt has a residence connected to a private well. See id. In 1992, Brown became a resident of New Hanover County. See id. at ¶ 71. Brown has a residence connected to the public water system. See id. In 2002, Engel became a resident of New Hanover County. See id. at ¶ 74. Engel has a residence connected to the public water system. See id. In 2005, Richards became a resident of Pender County. See id. at ¶ 80. Richards has a residence connected to a private well. See id. Plaintiffs allege as a result of defendants' actions: (1) McNatt developed breast cancer and thyroid disease, (2) Brown developed colon cancer and Graves' disease, (3) and Engel and Richards developed prostate cancer. See id. at ¶¶ 73, 76, 79, 82.

The Fayetteville Works Plant is located in Bladen County, North Carolina. See id. at ¶ 28. The Fayetteville Works Plant manufactures films, fibers, and specialty chemicals in five discrete manufacturing areas including fluromonomers/nafion, polymer processing aid ("PPA"), butacite, SentryGlas, and polyvinvyl fluoride ("PVF"). See id. at ¶ 30. Since the 1980s, defendants have used PFAS at the Fayetteville Works Plant. See id. at ¶¶ 33–34.

A drainage channel used at the outfall area exists from the Fayetteville Works Plant to the Cape Fear River. See id. This segment of the Cape Fear River constitutes surface water, "making it a source of water supply for drinking, culinary, or food processing purposes[,] as well as for aquatic life propagation and maintenance of biological integrity (including fishing and fish), wildlife, secondary recreation, and agriculture." Id. at ¶ 29. The wastewater from the Fayetteville Works Plant flows from the outfall area through wastewater treatment plants. See id. at ¶ 30. The

2

wastewater treatment plant dilutes the water with hundreds of thousands of gallons of Cape Fear River water and then discharges the diluted chemicals into the Cape Fear River. See id. While the dilution makes it harder to detect the chemicals, it does not reduce the contaminants flowing into the river. See id. Additionally, the Fayetteville Works Plant has one stack that releases airborne emissions of perfluoroalkyl, which results in additional water contamination of the Cape Fear River. See id. at ¶ 31.

Scientists have linked exposure to polyfluoroalkyl substances ("PFAS") to kidney cancer, testicular cancer, prostate cancer, ovarian cancer, non-Hodgkin's lymphoma, liver disease, ulcerative colitis, thyroid disease, hypercholesterolemia, and pregnancy-induced hypertension. See id. at ¶ 32. PFAS remain in the environment, particularly in water, for years. See id. at ¶ 39.

Defendants use Nacion byproducts 1 and 2 in their manufacturing process. See id. at ¶ 33. Additionally, in the early 2000s, following pressure from government regulators, defendants replaced perfluorooctanoic acid ("PFOA") with hexafluoropropylene oxide dimer acid ("GenX") in its manufacturing process for safety reasons. See id. at ¶ 33. Defendants used GenX, despite animal studies dating back to 1963 that demonstrated an association between GenX and various negative health impacts on laboratory animals. See id. at ¶ 35. These animal studies indicate that GenX may be as toxic or more toxic than PFOA and could result in adverse effects in humans including reproductive effects, developmental effects, liver effects, immune system disruption, stomach, ocular, and tongue toxicity, and cancer. See id. at ¶ 36. Even with this knowledge, defendants continued to discharge GenX into the Cape Fear River. See id. at ¶ 37. GenX remains in humans' bloodstream longer than other PFAS, requiring testing other biomarkers to determine GenX exposure over time. See id. at ¶ 39.

3

In November 2016, North Carolina State University researchers published a study identifying GenX and other PFAS in the Cape Fear River's water at King's Bluff from June 14, 2013, to December 2, 2013. See id. at ¶¶ 40–42. GenX levels reached 4,500 parts per trillion and averaged at 631 parts per trillion, exceeding the state's safety standard of 140 parts per trillion. See id. at ¶ 40.

On June 19, 2017, environmental regulators found GenX in quantities exceeding the state's safety standard at four wastewater treatment plants at Bladen Bluffs, NW Brunswick, Pender County, and CFPU Sweeney. See id. at ¶ 43. On June 20, 2017, Chemours announced it would capture, remove, and safely dispose of the contaminated wastewater. See id. Nonetheless, "[v]ery recent testing" shows that plants and vegetables near the Fayetteville Works Plant remain contaminated, meaning that residents potentially consumed PFAS discharged from the Fayetteville Works Plant. Id. at ¶ 44.

In November 2018, North Carolina State University researchers tested Fayetteville Works Plant neighboring residents' blood and discovered that 99% of participants tested positive for Nafion byproduct 2, reflecting more PFAS in their blood than individuals in other locations. See id. at ¶ 45. On February 25, 2019, Chemours and North Carolina entered a consent order requiring Chemours to remediate its discharge of PFAS. See id. at ¶¶ 46–48. Nonetheless, it is "exceedingly difficult . . . if not impossible" to remove PFAS from pipes, fittings, and fixtures. Id. at ¶¶ 50–53. Additionally, defendants have attempted to shield assets from creditors and victims. See id. at ¶¶ 54–69.

On June 15, 2022, the EPA released new advisory drinking water levels capping GenX at 10 parts per trillion. See id. at ¶ 49. "These new health advisories are 'non-enforceable and non-regulatory' and 'provide technical information to states agencies and other public health officials

4

on health effects, analytical methods, and treatment technologies associated with drinking water contamination.'" Id.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his or her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials

5

"attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In evaluating plaintiffs' state-law claims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex. rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public

6

policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

In count one, plaintiffs allege that defendants negligently discharged GenX from the Fayetteville Works Plant. See Am. Compl. ¶¶ 83–90. Plaintiffs allege defendants breached their duty of reasonable care by allowing contaminants to be released into the Cape Fear River, failed to remediate the release of PFAS, and failed to warn plaintiffs. See id. Defendants respond that plaintiffs have failed to allege a cognizable injury and that mere contamination alone is not sufficient to state a claim. See [D.E. 23] 8–11.

Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968); see Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cnty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To state an actionable claim, a plaintiff must plausibly allege that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010) (quoting Guthrie v. Conroy, 152 N.C. App. 15, 25, 567 S.E.2d 403, 410–11 (2002)); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E. 2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010).

7

As for duty, defendants owed to plaintiffs a duty to exercise ordinary care. See Fussell, 364 N.C. at 226, 695 S.E.2d at 440. "The duty of ordinary care is no more than a duty to act reasonably." Id., 695 S.E.2d at 440. Plaintiffs have plausibly alleged that defendants failed to act reasonably in operating the Fayetteville Works Plant (e.g., by discharging chemicals including GenX into the Cape Fear River even after learning of potential adverse health consequences associated with the chemicals). See Am. Compl. ¶¶ 33–42. As for proximate causation, defendants may be held liable only for injuries "that were reasonably foreseeable and avoidable through the exercise of due care." Fussell, 364 N.C. at 226, 695 S.E.2d at 440. Plaintiffs have plausibly alleged that defendants could reasonably foresee that plaintiffs' health would be harmed by discharging chemicals from the Fayetteville Works Plant. See Am. Compl. ¶¶ 40–45, 89–90. Additionally, plaintiffs have plausibly alleged that they suffered personal injury as a result of exposure to PFAS and GenX that defendants discharged. See id. at ¶¶ 73, 76, 79, 82, 90. Accordingly, the court denies defendants' motion to dismiss count one. See, e.g., Nix v. Chemours Co. FC, LLC, 456 F. Supp. 3d 748, 759–60 (E.D.N.C. 2019).

### B.

In count two, plaintiffs allege that defendants' alleged discharge of chemicals from the Fayetteville Works Plant constitutes gross negligence. See Am. Compl. ¶¶ 91–94. Defendants argue that plaintiffs have not alleged actual damages. See [D.E. 23] 10–11.

"[T]he difference between ordinary negligence and gross negligence is substantial." Yancey v. Lea, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001). "An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others." Id., 550 S.E.2d at 158 (emphasis omitted); see Ray v. N.C. Dep't of Transp., 366 N.C. 1, 13, 727 S.E.2d 675, 684 (2012);

Green ex rel. Crudup v. Kearney, 217 N.C. App. 65, 70–71, 719 S.E.2d 137, 141 (2011). "Gross negligence is determined based on the facts and circumstances of each case . . . ." Ray, 366 N.C. at 13, 727 S.E.2d at 684. Two factors are especially relevant: purposeful conduct and disregard for the safety of others. See id., 727 S.E.2d at 684; Yancey, 354 N.C. at 53, 550 S.E.2d at 158.

Plaintiffs have eked across the line and plausibly alleged that defendants purposefully discharged chemicals in disregard for the safety of others. See Am. Compl. ¶¶ 40–45, 92–93. Plaintiffs also have plausibly alleged that defendants' conduct caused plaintiffs' personal bodily injuries. See id. at ¶¶ 73, 76, 79, 82, 94. Accordingly, the court denies defendants' motion to dismiss count two. See, e.g., Nix, 456 F. Supp. 3d at 760.

C.

In count three, plaintiffs contend that defendants' conduct is negligent per se. See Am. Compl. ¶¶ 95–98. Plaintiffs contend that defendants' conduct violates various federal and state public safety statutes and regulations, including the Clean Water Act ("CWA"), the Resource Conservation Recovery Act ("RCRA"), the Safe Drinking Water Act ("SDWA"), and the Solid Waste Disposal Act ("SWDA"). See id. ¶ 97. Defendants argue that plaintiffs made only conclusory allegations that do not satisfy plaintiffs' pleading burden. See [D.E. 23] 10–11.

"Negligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning, 272 N.C. at 725, 158 S.E.2d at 895. To establish actionable negligence, a plaintiff must show "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant, 204 N.C. App. at 93–94, 693 S.E.2d at 156; see Ward, 368 N.C. at 37, 770 S.E.2d at 72; Bridges, 366 N.C. at 541, 742 S.E.2d at 796.

9

A statute or regulation may provide the required standard of care such that violation of the statute or regulation is negligent per se (i.e., conclusively establishes both duty and breach of duty in a plaintiff's prima facie case). See, e.g., Hart v. Ivey, 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992); Estate of Coppick ex rel. Coppick v. Hobbs Marina Props., LLC, 240 N.C. App. 324, 328, 772 S.E.2d 1, 5–6 (2015). To prevail on a claim of negligence per se, a plaintiff must show:

> (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and (6) that the violation of the statute proximately caused the injury.

Rudd v. Electrolux Corp., 982 F. Supp. 355, 365 (M.D.N.C. 1997); see Nix, 456 F. Supp. 3d at 761; Baldwin v. GTE S., Inc., 335 N.C. 544, 546–47, 439 S.E.2d 108, 109–10 (1994); Hardin v. York Mem'l Park, 221 N.C. App. 317, 326, 730 S.E.2d 768, 776 (2012).

Plaintiffs merely conclude that defendants' conduct violates the CWA without further explanation. Cf. Twombly, 550 U.S. at 555. Plaintiffs' claims based on alleged violations of the RCRA, the SDWA, and the SWDA are similarly conclusory. Cf. Am. Compl. ¶ 97. Accordingly, the court grants defendants' motion to dismiss count three. See, e.g., Nix, 456 F. Supp. 3d at 760–61.

D.

In count four, plaintiffs allege that defendants' discharge of chemicals from the Fayetteville Works Plant constitutes a public nuisance. See Am. Compl. ¶¶ 99–104. Defendants argue that plaintiffs fail to plausibly allege any unusual and special damage supporting a public nuisance claim. See [D.E. 23] 13–14.

"A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights." State v. Everhardt, 203 N.C.

10

610, 617, 166 S.E. 738, 741–42 (1932) (quotation omitted); Twitty v. State, 85 N.C. App. 42, 49, 354 S.E.2d 296, 301 (1987). "A public nuisance affects the local community generally and its maintenance constitutes an offense against the State." Twitty, 85 N.C. App. at 49, 354 S.E.2d at 301. "Whatever tends to endanger life, or generate disease, and affect the health of the community . . . is generally, at common law, a public nuisance . . . ." Everhardt, 203 N.C. at 618, 166 S.E. at 742.

Under North Carolina law, a private plaintiff must have standing to bring a claim for public nuisance. See Neuse River Found., Inc. v. Smithfield Foods, Inc., 155 N.C. App. 110, 113–14, 574 S.E.2d 48, 51–52 (2002), abrogated on other grounds by Comm. to Elect Dan Forest v. Emps. Pol. Action Comm., 376 N.C. 558, 853 S.E.2d 698 (2021). Unlike standing under Article III, standing under North Carolina law refers "generally to a party's right to have a court decide the merits of a dispute." Id. (collecting cases); see, e.g., Stanley v. Dep't of Conservation & Dev., 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973). A private party has standing to bring a public nuisance claim "as long as the party has suffered an injury that cannot be considered merged in the general public right." Neuse River Found., Inc., 155 N.C. App. at 115, 574 S.E.2d at 52 (cleaned up); see Barrier v. Troutman, 231 N.C. 47, 49, 55 S.E.2d 923, 925 (1949) ("[N]o action lies in favor of an individual in the absence of a showing of unusual and special damage, differing from that suffered by the general public."); Hampton v. N.C. Pulp Co., 223 N.C. 535, 543–44, 27 S.E.2d 538, 543–44 (1943); cf. Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 97 (4th Cir. 2011) (applying West Virginia law and holding that there is no West Virginia statutory or common law authority suggesting a class action exception to the special-injury rule).

To state a public nuisance claim as private parties, plaintiffs must allege "(1) injury to a protected interest that cannot be considered merged in the general public right; (2) causation; and

(3) proper, or individualized, forms of relief." Neuse River Found., Inc., 155 N.C. App. at 116, 574 S.E.2d at 53. Plaintiffs have not plausibly alleged that they suffered "unusual and special damage" caused by defendants' alleged interference with plaintiffs' health. See Barrier, 231 N.C. at 49–50, 55 S.E.2d at 925 (collecting cases); Hampton, 223 N.C. at 544–48, 27 S.E.2d at 544–47 (discussing injury to fishing business); Neuse River Found., Inc., 155 N.C. App. at 116, 574 S.E.2d at 53. Accordingly, the court dismisses the public nuisance claim in count four. See, e.g., Nix, 456 F. Supp. 3d at 761–62.

E.

In count five, plaintiffs also allege that defendants' discharge of chemicals from the Fayetteville Works Plant constitutes a private nuisance. See Am Compl. ¶¶ 99–104. Defendants argue that plaintiffs fail to allege a private harm. See [D.E. 23] 12–13.

Under North Carolina law, plaintiffs seeking to recover for a private nuisance must show a substantial and unreasonable interference with the use and enjoyment of their property. See Kent v. Humphries, 303 N.C. 675, 677, 281 S.E.2d 43, 45 (1981); Morgan v. High Penn Oil Co., 238 N.C. 185, 193–94, 77 S.E.2d 682, 689 (1953); Barrier, 231 N.C. at 49–50, 55 S.E.2d at 925; BSK Enters., Inc. v. Beroth Oil Co., 246 N.C. App. 1, 24–25, 783 S.E.2d 236, 252 (2016); The Shadow Grp., LLC v. Heather Hills Home Owners Ass'n, 156 N.C. App. 197, 200, 579 S.E.2d 285, 287 (2003); Jordan v. Foust Oil Co., 116 N.C. App. 155, 167, 447 S.E.2d 491, 498 (1994); Grant v. E.I. du Pont de Nemours & Co., No. 4:91-CV-55, 1995 WL 18239435, at *5 (E.D.N.C. July 14, 1995) (unpublished). An interference is substantial when it results in significant annoyance, some material physical discomfort, or injury to plaintiffs' health or property. See Watts v. Pama Mfg. Co., 256 N.C. 611, 617, 124 S.E.2d 809, 813–14 (1962); Pake v. Morris, 230 N.C. 424, 426, 53 S.E.2d 300, 301 (1949); Duffy v. E.H. & J.A. Meadows Co., 131 N.C. 31, 34, 42 S.E. 460, 461

12

(1902); The Shadow Grp., LLC, 156 N.C. App. at 200, 579 S.E.2d at 287. Reasonableness is judged by an objective standard and balances the relative benefit to defendants and harm to plaintiffs. See Pendergrast v. Aiken, 293 N.C. 201, 217, 236 S.E.2d 787, 797 (1977) (listing factors); Watts, 256 N.C. at 618, 124 S.E.2d at 814 (same); Rainey v. St. Lawrence Homes, Inc., 174 N.C. App. 611, 613–14, 621 S.E.2d 217, 220 (2005) (same).

Plaintiffs have plausibly alleged that defendants have interfered with plaintiffs' use and enjoyment of their property by allegedly discharging PFAS and GenX from the Fayetteville Works Plant. See Am. Compl. ¶¶ 100–01. Plaintiffs have plausibly alleged that the interference was both substantial and objectively unreasonable. See id. at ¶¶ 100, 102; Nix, 456 F. Supp. 3d at 762–63. But cf. New Mexico v. Gen. Elec. Co., 335 F. Supp. 2d 1185, 1212 (D.N.M. 2004) ("Under New Mexico law, water need not be pristine to be drinkable, and use for drinking water purposes depends upon whether applicable water quality standards are met, not whether the water yet remains in its primordial state, untouched by any of the chemical remnants of the modem age."). Accordingly, the court denies defendants' motion to dismiss the private nuisance claim in count five. See, e.g., Nix, 456 F. Supp. 3d at 762–63.

F.

In count six, plaintiffs allege that defendants' alleged discharge of chemicals from the Fayetteville Works Plant constitutes a trespass to real property. See Am. Compl. ¶¶ 105–11. Defendants argue that plaintiffs fail to plausibly allege the elements of a trespass to real property claim. See [D.E. 23] 14–15.

Under North Carolina law, trespass is "a wrongful invasion of the possession of another." Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003); see State ex rel. Bruton v. Flying 'W' Enters., Inc., 273 N.C. 399, 415, 160 S.E.2d 482, 493 (1968);

13

Elec. World, Inc. v. Barefoot, 153 N.C. App. 387, 393, 570 S.E.2d 225, 230 (2002); cf. Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952) ("The essence of a trespass to [real property] is the disturbance of possession."). A claim of trespass to real property requires "(1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." Singleton, 357 N.C. at 627, 588 S.E.2d at 874; Fordham v. Eason, 351 N.C. 151, 153, 521 S.E.2d 701, 703 (1999) (quotation omitted); see, e.g., Elec. World, Inc., 153 N.C. App. at 393, 570 S.E.2d at 230; Jordan, 116 N.C. App. at 166, 447 S.E.2d at 498. Because "every unauthorized entry on land in the peaceable possession of another constitutes a trespass, without regard to the degree of force used and irrespective of whether actual damage is done," a complaint "states a cause of action for the recovery of nominal damages for a properly pleaded trespass to [real property] even if it contains no allegations setting forth the character and amount of damages." Matthews, 235 N.C. at 283, 69 S.E.2d at 555; see Keziah v. Seaboard Air Line R.R., 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968); Hutton & Bourbonnais v. Cook, 173 N.C. 496, 499, 92 S.E. 355, 356 (1917); Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) (noting that trespass to real property is among the torts that "do not include actual damage as an essential element"), aff'd, 331 N.C. 743, 417 S.E.2d 447 (1992).

Plaintiffs have plausibly alleged a claim of trespass to real property. First, plaintiffs have plausibly alleged that they were in possession of real property. See Am. Compl. ¶¶ 71, 74, 77, 80, 106–07. Second, plaintiffs have plausibly alleged that defendants, by knowingly or purposefully discharging chemicals including GenX, have intentionally and unauthorizedly entered their property. See id. at ¶¶ 108–09; BSK Enters., Inc., 246 N.C. App. at 24–26, 783 S.E.2d at 252–53; Jordan, 116 N.C. App. at 166–67, 447 S.E.2d at 498; Rudd, 982 F. Supp. at 370. Plaintiffs also

14

have plausibly alleged nominal damages. See Am. Compl. ¶ 111. Accordingly, the court denies defendants' motion to dismiss count six. See, e.g., Nix, 456 F. Supp. 3d at 763–64.

G.

In count seven, plaintiffs allege that defendants' alleged discharge of chemicals from the Fayetteville Works Plant constitutes a trespass to chattel. See Am. Compl. ¶¶ 105–11. Under North Carolina law, a claim of trespass to chattels requires that the plaintiff show (1) actual or constructive possession of the personal property or chattel at the time of the trespass and (2) an unlawful, unauthorized interference or dispossession of the property by the defendant. See Fordham, 351 N.C. at 155, 157, 521 S.E.2d at 704–05; Steele v. Bowden, 238 N.C. App. 566, 575, 768 S.E.2d 47, 55–56 (2014); Kirschbaum v. McLaurin Parking Co., 188 N.C. App. 782, 786–87, 656 S.E.2d 683, 686 (2008). A fixture is property that, "though originally a movable chattel," is "regarded as a part of the land" Little ex rel. Davis v. Nat'l Servs. Indus., Inc., 79 N.C. App. 688, 692, 340 S.E.2d 510, 513 (1986) (quotation omitted). "As a general rule, whatever is attached to the land is understood to be a part of the realty . . . ." Lee-Moore Oil Co. v. Cleary, 295 N.C. 417, 419, 245 S.E.2d 720, 722 (1978) (quotation omitted); see Wilson v. McLeod Oil Co., 327 N.C. 491, 515–16, 398 S.E.2d 586, 598–99 (1990). "The test for determining whether a chattel which has been annexed to land has become real property or remains personal property is the intention with which the annexation was made." Hughes v. Young, 115 N.C. App. 325, 328, 444 S.E.2d 248, 250 (1994); see Brown v. N.C. Joint Stock Land Bank of Durham, 213 N.C. 594, 598, 197 S.E. 140, 142 (1938).

Plaintiffs have identified as chattels water and their real property. See Am. Compl. ¶¶ 106, 109. The court cannot expand North Carolina public policy to encompass such a claim. Cf. Time Warner, 506 F.3d at 313–14. Therefore, plaintiffs have not plausibly alleged that defendants have

15

interfered with any chattels in plaintiffs' possession. See, e.g., Cape Fear Pub. Util. Auth. v. Chemours Co. FC, LLC, No. 7:17-CV-195, 2019 WL 13300188, at *7 (E.D.N.C. Apr. 19, 2019) (unpublished). Accordingly, the court grants defendants' motion to dismiss count seven.

H.

In count eight, plaintiffs allege that defendants' alleged discharge of chemicals from the Fayetteville Works Plant constitutes an unfair and deceptive trade practice. See Am. Compl. ¶¶ 112–20. Defendants argue that plaintiffs fail to plausibly allege a business relationship between plaintiffs and defendants. See [D.E. 23] 16–17.

To state a UDTPA claim, defendants must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the defendants. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006). The Act provides that "[f]or purposes of this section, 'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 592–93, 403 S.E.2d 483, 492 (1991) (quoting N.C.G.S. § 75-1.1(b)). "[A] practice is deceptive if it has the tendency to deceive . . . . [A] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive,

16

unscrupulous, or substantially injurious to consumers." Gray, 352 N.C. at 68, 529 S.E.2d at 681 (quotation omitted); see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

To plausibly allege a UDTPA claim, the plaintiff must be in a "business relationship" with or be a "customer[] of" the defendant. Town of Belhaven v. Pantego Creek, LLC, 250 N.C. App. 459, 473, 793 S.E.2d 711, 720 (2016); see Washington v. Trinity Indus., Inc., No. 1:15CV517, 2016 WL 4544048, at *4–6 (M.D.N.C. Aug. 31, 2016) (unpublished) (holding that only plaintiffs who "participate in an exchange of value" with a defendant have standing to bring a claim and collecting cases for the same); see, e.g., Walker, 362 N.C. at 68, 653 S.E.2d at 397 (allowing a plaintiff "who selected the interior details for the home, who planned to live in the home, and who was going to make the monthly installment payments" to assert a UDTPA claim against a mobile home supplier).

Plaintiffs fail to plausibly allege a business relationship or a relationship in or affecting commerce between plaintiffs and defendants. Accordingly, the court grants defendants' motion to dismiss count eight. See, e.g., Aqua N.C., Inc. v. Corteva, Inc., No. 7:23-CV-16, 2024 WL 3367514, at *8 (E.D.N.C. July 9, 2024) (unpublished).

### III.

In sum, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss plaintiffs' amended complaint [D.E. 22]. The court DISMISSES AS MOOT defendants' motion to dismiss plaintiffs' complaint [D.E. 19]. The only claims that remain are plaintiffs' negligence, gross negligence, private nuisance, and trespass to real property claims against defendants.

17

SO ORDERED. This 18 day of September, 2024.

                                                 *JAMES C. DEVER III*
                                                 United States District Judge