IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-1114-D

| | |
|---|---|
| ERIC CONKLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CORTEVA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

On June 30, 2023, Eric Conklin ("Conklin") filed a complaint against Corteva, Inc. ("Corteva"), DuPont de Nemours, Inc. ("DuPont"), EIDP, Inc. ("EIDP"), the Chemours Company ("Chemours"), and the Chemours Company FC, LLC ("Chemours FC") (collectively, "defendants") [D.E. 1]. On December 5, 2023, defendants moved to dismiss Conklin's complaint for failure to state a claim [D.E. 21] and filed a memorandum in support [D.E. 22]. See Fed. R. Civ. P. 12(b)(6). On December 18, 2023, Conklin amended his complaint [D.E. 23]. Conklin alleged: (1) negligence, (2) gross negligence, (3) negligence per se, (4) public nuisance, (5) private nuisance, (6) trespass to real property, and (7) trespass to chattel. See [D.E. 23] ¶¶ 71–100.

On December 29, 2023, defendants moved to dismiss Conklin's amended complaint for failure to state a claim [D.E. 24] and filed a memorandum in support [D.E. 25]. See Fed. R. Civ. P. 12(b)(6). On August 2, 2024, Conklin responded in opposition [D.E. 38]. On August 16, 2024, defendants replied [D.E. 39]. On September 19, 2024, the court granted in part and denied in part defendants' motion to dismiss for failure to state a claim [D.E. 40]. See Conklin v. Corteva, Inc., No. 7:23-CV-1114, 2024 WL 4242797 (E.D.N.C. Sept. 19, 2024) (unpublished). Conklin's claims for negligence, gross negligence, private nuisance, and trespass to real property survived. See id. at *1.

On February 14, 2025, defendants moved for entry of a case management order requiring Conklin and the plaintiffs in seven other related cases to submit expert declarations confirming their injuries and proximate causation [D.E. 55], filed a memorandum in support [D.E. 56], and submitted a proposed case management order [D.E. 55-1]. On March 17, 2025, Conklin responded in opposition [D.E. 57]. On March 31, 2025, defendants replied [D.E. 58]. As explained below, the court grants defendants' motion for entry of a case management order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

I.

Conklin is the plaintiff in case no. 7:23-CV-1114. Conklin is one of 60 plaintiffs currently pursuing claims against the defendants in this court in eight related cases. See Eric Conklin v. Corteva, Inc. et al., (7:23-CV-1114); Beverly Brown, et al., v. Corteva, Inc. et al., (7:23-CV-1409); Page Ritchie, et al., v. Corteva, Inc., et al., (7:23-CV-1465); Berdie E. Boone, et al., v. Corteva, Inc., et al., (7:23-CV-1473); Amy Godwin, et al., v. Corteva, Inc., et al., (7:23-CV-1500); Devon Bartholomew, et al., v. Corteva, Inc., et al., (7:23-CV-1592); Steven Aaron, et al., v. Corteva, Inc., et al., (7:23-CV-1599); Constance Baker, et al., v. Corteva, Inc., et al., (7:23-CV-1666) (collectively, the "eight related cases"). Because the eight related cases involve the same claims and defendants, this order refers to the individual plaintiffs collectively as "plaintiffs." Likewise, because the eight related cases mirror one another, the defendants have filed this motion in each related case and plaintiffs have, likewise, opposed defendants' motion in each related case. See Eric Conklin v. Corteva, Inc. et al., (7:23-CV-1114) [D.E. 55]; Beverly Brown, et al., v. Corteva, Inc. et al., (7:23-CV-1409) [D.E. 52]; Page Ritchie, et al., v. Corteva, Inc., et al., (7:23-CV-1465) [D.E. 54]; Berdie E. Boone, et al., v. Corteva, Inc., et al., (7:23-CV-1473) [D.E. 58]; Amy Godwin, et al., v. Corteva, Inc., et al., (7:23-CV-1500) [D.E. 52]; Devon Bartholomew, et al., v. Corteva, Inc., et al., (7:23-CV-1592) [D.E. 50]; Steven Aaron, et al., v. Corteva, Inc., et al., (7:23-CV-1599)

[D.E. 64]; Constance Baker, et al., v. Corteva, Inc., et al., (7:23-CV-1666) [D.E. 72]. This order resolves defendants' identical motions in the eight related cases and recounts plaintiffs' general factual allegations concerning defendants' motions.

The Fayetteville Works Plant is located in Bladen County, North Carolina. See Am. Compl. [D.E. 23] ¶ 25. The Fayetteville Works Plant manufactures films, fibers, and specialty chemicals in five discrete manufacturing areas including fluromonomers/nafion, polymer processing aid ("PPA"), butacite, SentryGlas, and polyvinvyl fluoride ("PVF"). See id. at ¶ 27. Since the 1980s, defendants have used PFAS at the Fayetteville Works Plant. See id. at ¶¶ 30–32.

A drainage channel used at the outfall area exists from the Fayetteville Works Plant to the Cape Fear River. See id. at ¶ 25. This segment of the Cape Fear River constitutes surface water, "making it a source of water supply for drinking, culinary, or food processing purposes, as well as for aquatic life propagation and maintenance of biological integrity (including fishing and fish), wildlife, secondary recreation, and agriculture." Id. at ¶ 26 (cleaned up). The wastewater from the Fayetteville Works Plant flows from the outfall area through wastewater treatment plants. See id. at ¶ 25–26. The wastewater treatment plant dilutes the water with hundreds of thousands of gallons of Cape Fear River water and then discharges the diluted chemicals into the Cape Fear River. See id. While the dilution makes it harder to detect the chemicals, it does not reduce the contaminants flowing into the river. See id. at ¶ 27. Additionally, the Fayetteville Works Plant has one stack that releases airborne emissions of perfluoroalkyl, which results in additional water contamination of the Cape Fear River. See id. at ¶ 28.

Scientists have linked exposure to polyfluoroalkyl substances ("PFAS") to kidney cancer, testicular cancer, prostate cancer, ovarian cancer, non-Hodgkin's lymphoma, liver disease, ulcerative colitis, thyroid disease, hypercholesterolemia, and pregnancy-induced hypertension. See id. at ¶ 29. PFAS remain in the environment, particularly in water, for years. See id. at ¶ 36.

Defendants use Nafion byproducts 1 and 2 in their manufacturing process. See id. at ¶ 30. In the early 2000s, following pressure from government regulators, defendants replaced perfluorooctanoic acid ("PFOA") with hexafluoropropylene oxide dimer acid ("GenX") in its manufacturing process for safety reasons. See id. Defendants used GenX despite animal studies dating back to 1963 reflecting an association between GenX and various negative health impacts on laboratory animals. See id. at ¶ 32. These animal studies indicate that GenX may be as toxic or more toxic than PFOA and could adversely affect humans. See id. at ¶ 33. Even with this knowledge, defendants continued to discharge GenX into the Cape Fear River. See id. at ¶ 34. GenX remains in humans' bloodstream longer than other PFAS, requiring testing other biomarkers to determine GenX exposure over time. See id. at ¶ 36.

In November 2016, North Carolina State University researchers published a study identifying GenX and other PFAS in the Cape Fear River's water at King's Bluff from June 14, 2013, to December 2, 2013. See id. at ¶¶ 37–39. GenX levels reached 4,500 parts per trillion and averaged at 631 parts per trillion, exceeding the state's safety standard of 140 parts per trillion. See id. at ¶ 37.

On June 19, 2017, environmental regulators found GenX in quantities exceeding the state's safety standard at four wastewater treatment plants at Bladen Bluffs, NW Brunswick, Pender County, and CFPU Sweeney. See id. at ¶ 40. On June 20, 2017, Chemours announced it would capture, remove, and safely dispose of the contaminated wastewater. See id. Nonetheless, "[v]ery recent testing" shows that plants and vegetables near the Fayetteville Works Plant remain contaminated, meaning that residents potentially consumed PFAS discharged from the Fayetteville Works Plant. Id. at ¶ 41.

In November 2018, North Carolina State University researchers tested Fayetteville Works Plant neighboring residents' blood and discovered that 99% of participants tested positive for

4

Nafion byproduct 2, reflecting more PFAS in their blood than individuals in other locations. See id. at ¶ 42. On February 25, 2019, Chemours and North Carolina entered a consent order requiring Chemours to remediate its PFAS discharge. See id. at ¶¶ 43–45. Nonetheless, it is "exceedingly difficult . . . if not impossible" to remove PFAS from pipes, fittings, and fixtures. Id. at ¶¶ 48–50.

On June 15, 2022, the EPA released new advisory drinking water levels capping GenX at 10 parts per trillion. See id. at ¶ 46. "These health advisories are 'non-enforceable and non-regulatory' and 'provide technical information to states agencies and other public health officials on health effects, analytical methods, and treatment technologies associated with drinking water contamination.'" Id.

II.

In the eight related cases, 60 individual plaintiffs assert nearly identical claims against the same defendants for personal and property damage due to defendants' alleged PFAS contamination of the Cape Fear River. See [D.E. 57] 7–13.[1] The parties have entered numerous joint motions to streamline pretrial discovery and motions. See, e.g., [D.E. 52]; [D.E. 53]. The parties, however, failed to agree about whether each plaintiff should submit "an expert declaration confirming injury and proximate causation" concerning their alleged personal injuries. [D.E. 56] 4; see [D.E. 52] ¶ 10. On January 17, 2025, the court ordered that "[i]f [defendants] wish to seek the inclusion of this provision, then [d]efendants shall make a motion for that relief, together with a supporting briefing." [D.E. 54] 6.

---

[1] See Eric Conklin v. Corteva, Inc. et al., (7:23-CV-1114) [D.E. 23]; Beverly Brown, et al., v. Corteva, Inc. et al., (7:23-CV-1409) [D.E. 21]; Page Ritchie, et al., v. Corteva, Inc., et al., (7:23-CV-1465) [D.E. 24]; Berdie E. Boone, et al., v. Corteva, Inc., et al., (7:23-CV-1473) [D.E. 27]; Amy Godwin, et al., v. Corteva, Inc., et al., (7:23-CV-1500) [D.E. 22]; Devon Bartholomew, et al., v. Corteva, Inc., et al., (7:23-CV-1592) [D.E. 20]; Steven Aaron, et al., v. Corteva, Inc., et al., (7:23-CV-1599) [D.E. 14]; Constance Baker, et al., v. Corteva, Inc., et al., (7:23-CV-1666) [D.E. 1].

5

On February 14, 2025, defendants moved for entry of a case management order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation. See [D.E. 55]. If the court granted the defendants' motion, defendants argue that "all [p]laintiffs would need to do is furnish an expert declaration supporting their allegations that [d]efendants' [Fayetteville Works] PFAS caused their alleged personal injuries." Id. at 4. Such case management orders are called "Lone Pine orders," after the case Lore v. Lone Pine Corp., No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986) (unpublished).

Lone Pine orders assist in managing "complex issues and potential burdens on defendants and the court in mass tort litigation, essentially requiring plaintiffs to produce a measure of evidence to support their claims at the outset." In re Digitek Prod. Liab. Litig., 264 F.R.D. 249, 255 (S.D.W. Va. 2010); see Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 604 n.2 (5th Cir. 2006); Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); McManaway v. KBR, Inc., 265 F.R.D. 384, 385 (S.D. Ind. 2009); Abrams v. Ciba Specialty Chem. Corp., No. CIV.A. 08-68, 2008 WL 4710724, at *2 (S.D. Ala. 2008) (unpublished); Ramos v. Playtex Prod., Inc., No. 08 CV 2703, 2008 WL 4066250, at *6 (N.D. Ill. Aug. 27, 2008) (unpublished); Abbatiello v. Monsanto Co., 569 F. Supp. 2d 351, 353 n.3 (S.D.N.Y. 2008); In re Vioxx Prod. Liab. Litig., 557 F. Supp. 2d 741, 743 (E.D. La. 2008), aff'd, 388 F. App'x 391 (5th Cir. 2010) (per curiam) (unpublished); Burns v. Universal Crop Prot. Alliance, No. 4:07CV535, 2007 WL 2811533, at *1 (E.D. Ark. 2007) (unpublished); Morgan v. Ford Motor Co., No. 06-1080, 2007 WL 1456154, at *7 (D.N.J. May 17, 2007) (unpublished); Baker v. Chevron USA, Inc., No. 105-CV-227, 2007 WL 315346, at *1 (S.D. Ohio 2007) (unpublished). Lone Pine orders "identify and cull potentially meritless claims and streamline litigation in complex cases." In re Vioxx, 557 F. Supp. at 743; Baker, 2007 WL 315346, at *1.

6

Courts in mass torts cases "routinely" issue Lone Pine orders, often under Federal Rule of Civil Procedure 16(b)(3) and 16(c)(2)(L). In re Digitek, 264 F.R.D. at 256; see Acuna, 200 F.3d at 340; In re Vioxx, 557 F. Supp. 2d at 743; McManaway, 265 F.R.D. at 385; Ramos, 2008 WL 4066250, at *6; Morgan, 2007 WL 1456154, at *7. Lone Pine orders, however, "may not be appropriate in every case and, even when appropriate, they may not be suitable at every stage of the litigation." In re Vioxx, 557 F. Supp. 2d at 744. When crafting a Lone Pine order, "a court should strive to strike a balance between efficiency and equity." Id. at 743.

In deciding whether to issue a Lone Pine order, a court considers: (1) the posture of the action, (2) the peculiar case management needs presented, (3) external agency decisions impacting the merits of the case, (4) the availability and use of other procedures explicitly sanctioned by the federal rules or statutes that would accomplish the same goals as the proposed Lone Pine order, and (5) the type of injury alleged by plaintiffs and its cause. See Steering Comm., 461 F.3d at 604 n.2; In re Digitek, 264 F.R.D. at 256; McManaway, 265 F.R.D. at 385; Abrams, 2008 WL 4710724, at *2. In addition to these five factors, "case complexity and pleading defects are additional factors worth considering in advance of entering a Lone Pine order." In re Digitek, 264 F.R.D. at 257. In issuing a Lone Pine order, a court must take care not to vitiate existing procedural rules and safeguards. See id. at 257–58 (collecting cases).

The first factor requires the court to examine the posture of these eight related cases and to analyze whether a Lone Pine order is appropriate. See Acuna, 200 F.3d at 340; In re Digitek, 264 F.R.D. at 258; McManaway, 265 F.R.D. at 387–88; In re Vioxx, 557 F. Supp. 2d at 744. Although some courts have refused to issue Lone Pine orders before discovery, other courts have recognized that a case's specific circumstances might require a court to issue a Lone Pine order before discovery. See, e.g., Acuna, 200 F.3d at 340; In re 1994 Exxon Chem. Plant Fire, No. 05-1639, 2005 WL 6252312, at *2 (M.D. La. Apr. 7, 2005) (unpublished), modified sub nom. In re 1994

Exxon Chem. Plant Fire Litig., No. 94-1668, 2005 WL 6252291 (M.D. La. Apr. 29, 2005) (unpublished).

Defendants argue that a pre-discovery Lone Pine order is appropriate here because "the requested information is the kind that plaintiffs should have had in their possession before filing the lawsuit pursuant to Fed. R. Civ. P. 11." [D.E. 56] 7; see In re 1994 Exxon Chem. Plant Fire Litig., 2005 WL 6252291, at *2. Defendants also argue that courts "have also found pre-discovery Lone Pine orders appropriate where the parties entered into [the lawsuit] armed with significant history, information, and documentation." Id. at 8 (cleaned up); see Abner v. Hercules, Inc., No. 14CV63, 2014 WL 5817542, at *2–4 (S.D. Miss. Nov. 10, 2014) (unpublished), amended in part, No. 14CV63, 2015 WL 13821942 (S.D. Miss. Feb. 5, 2015) (unpublished).

In opposition, plaintiffs argue defendants' motion for a Lone Pine order is premature, "being made before any meaningful discovery has commenced." [D.E. 57] 16. Specifically, plaintiffs argue "Lone Pine orders are disfavored in the early stages of the proceeding where no meaningful discovery has taken place." Id. (citing Marquez v. BNSF Ry. Co., No. 17-CV-01153, 2017 WL 3390577, at *2 (D. Colo. Aug. 8, 2017) (unpublished)). Plaintiffs also argue that defendants mistakenly rely on Acuna and Vioxx because those cases involved larger numbers of plaintiffs and claims. See id. at 17–19.

Defendants seek a Lone Pine order requiring the plaintiffs to "furnish an expert declaration supporting their allegations that [d]efendants' [Fayetteville Works] PFAS caused their alleged person injuries." [D.E. 55] 4. Plaintiffs' cases have been pending since 2023. See Eric Conklin v. Corteva, Inc. et al., (7:23-CV-1114) [D.E. 1]; Beverly Brown, et al., v. Corteva, Inc. et al., (7:23-CV-1409) [D.E. 1]; Page Ritchie, et al., v. Corteva, Inc., et al., (7:23-CV-1465) [D.E. 1]; Berdie E. Boone, et al., v. Corteva, Inc., et al., (7:23-CV-1473) [D.E. 1]; Amy Godwin, et al., v. Corteva, Inc., et al., (7:23-CV-1500) [D.E. 1]; Devon Bartholomew, et al., v. Corteva, Inc., et al.,

(7:23-CV-1592) [D.E. 1]; Steven Aaron, et al., v. Corteva, Inc., et al., (7:23-CV-1599) [D.E. 64]; Constance Baker, et al., v. Corteva, Inc., et al., (7:23-CV-1666) [D.E. 1]. Defendants' proposed case management order requests confirmation that plaintiffs possess some evidence tending to show that plaintiffs suffered the injuries alleged in their complaints, and that defendants' alleged PFAS contamination of the Cape Fear River caused plaintiffs' alleged injuries. See [D.E. 55-1]. Plaintiffs' amended complaints allege injuries caused by defendants' alleged PFAS contamination of the Cape Fear River. See [D.E. 57] 7–13. Thus, the information sought by defendants' proposed Lone Pine order is the same "information which plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)." Acuna, 200 F.3d at 340.

The court has addressed defendants' motion to dismiss and dismissed some claims in plaintiffs' amended complaints. See Ritchie v. Corteva, Inc., No. 7:23-CV-1465, 2024 WL 4242799 (E.D.N.C. Sept. 19, 2024) (unpublished); Baker v. Corteva, Inc., No. 7:23-CV-1666, 2024 WL 4242806 (E.D.N.C. Sept. 19, 2024) (unpublished); Conklin v. Corteva, Inc., No. 7:23-CV-1114, 2024 WL 4242797 (E.D.N.C. Sept. 19, 2024) (unpublished); Aaron v. Corteva, Inc., No. 7:23-CV-1599, 2024 WL 4242805 (E.D.N.C. Sept. 19, 2024) (unpublished); Boone v. Corteva, Inc., No. 7:23-CV-1473, 2024 WL 4242800 (E.D.N.C. Sept. 19, 2024) (unpublished); Godwin v. Corteva, Inc., No. 7:23-CV-1500, 2024 WL 4242802 (E.D.N.C. Sept. 19, 2024) (unpublished); Bartholomew v. Corteva, Inc., No. 7:23-CV-1592, 2024 WL 4242803 (E.D.N.C. Sept. 19, 2024) (unpublished); Brown v. Corteva, Inc., No. 7:23-CV-1409, 2024 WL 4229937, at *9 (E.D.N.C. Sept. 18, 2024) (unpublished). Thus, the first factor weighs in favor of granting defendants' motion for a Lone Pine order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

The second factor requires the court to consider the peculiar case management needs in these eight related cases. See Acuna, 200 F.3d at 340; In re Digitek, 264 F.R.D. at 256;

McManaway, 265 F.R.D. at 387–89; In re Vioxx, 557 F. Supp. 2d at 744–45. Specifically, courts consider the "complex discovery and case management needs that exist in cases with multiple plaintiffs and defendants." Marquez, 2017 WL 3390577, at *3; see Abner, 2014 WL 5817542, at *3.

Citing the 60 plaintiffs and eight related cases, defendants argue that "[t]his is a substantial number of cases and will involve a tremendous amount of complex fact and expert discovery, including, but not limited to: (i) the production of thousands of pages of medical records, (ii) sixty plaintiff depositions, (iii) numerous depositions of other fact witnesses that support their claims, and (iv) depositions of treating physicians and expert witnesses who diagnosed each individual [p]laintiff with their medical conditions." [D.E. 56] 10–11 (quotation omitted). Defendants also claim plaintiffs' counsel "has a history of filing large numbers of PFAS cases, only to voluntarily dismiss them when pressed for supporting evidence." Id. at 11.

Plaintiffs respond that "[t]here are no unusual or difficult circumstances presented by th[ese] case[s]." [D.E. 57] 19. Moreover, plaintiffs argue that Lone Pine orders "are typically reserved for matters involving hundreds of parties represented by dozens of attorneys as a method of managing extremely complex and very burdensome discovery in advanced mass tort litigation." Id. According to plaintiffs, because this case "is not overly complex and does not pose peculiar case management needs," the court should deny defendants' motion. Id. at 20.

In their eight operative complaints, plaintiffs assert personal and property damages stemming from defendants alleged PFAS contamination. See [D.E. 57] 7–13. Plaintiffs chose not to seek class certification. Instead, 60 individual plaintiffs have brought nearly identical claims against the same defendants, with each plaintiff asserting his or her own theory of injury, damage, and causation. This litigation strategy presents unique case management challenges.

The court rejects plaintiffs' arguments that Lone Pine orders "are typically reserved for matters involving hundreds of parties." [D.E. 57] 19. Whether to enter a Lone Pine order is a case specific inquiry, and courts have issued Lone Pine orders in cases involving as few as 15 plaintiffs. See, e.g., Ashford v. Hercules, Inc., No. 15CV27, 2015 WL 6118387, at *3–4 (S.D. Miss. Oct. 16, 2015) (unpublished). Thus, the second factor weighs in favor of granting defendants' motion for entry of a Lone Pine order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

The third factor requires the court to consider any external agency decisions affecting the merits of these eight related cases. See In re Digitek, 264 F.R.D. at 256; McManaway, 265 F.R.D. at 387–89; In re Vioxx, 557 F. Supp. 2d at 744–45. Defendants argue "[a] Lone Pine order should issue only in an exceptional case and after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information." [D.E. 56] 12 (emphasis omitted); McManaway, 265 F.R.D. at 388. To this end, defendants contend that "recent EPA decisions cast serious doubt on [p]laintiffs' ability to prove that they have been exposed to the type and amount of PFAS capable of damaging their health and that such exposure . . . cause their alleged injuries." [D.E. 56] 12. Specifically, defendants argue that the EPA recently issued maximum contaminate levels ("MCLs") for five relevant PFAS compounds and that the new MCLs undermine plaintiffs' ability to prove their claims. See id. at 12–14. Defendants also argue plaintiffs' own pleadings fail to sufficiently allege causation. See id. at 13–15.

In opposition, plaintiffs argue that the EPA's new MCLs, along with research at North Carolina State University, support plaintiffs' claims. See [D.E. 57] 20–21. Moreover, plaintiffs argue "GenX and other PFAS found in the [Cape Fear] River have consistently been detected at

11

levels far exceeding the EPA's Health Advisory Limit . . . for PFOS/PFOA and North Carolina state equivalents." Id. at 21.

The EPA's recently published MCLs affect these eight related cases insofar as the new MCLs will aid the trier of fact in determining whether plaintiffs have proven their claims. Moreover, the EPA's continued research on PFAS compounds and the publication of associated MCLs will affect the viability of plaintiffs' claims.

Alhough researchers at North Carolina State University may have detected certain PFAS chemicals in the Cape Fear River at levels exceeding North Carolina's standard, other PFAS compounds remain unresearched and without an associated MCL. As plaintiffs admit, PFAS research remains "ongoing" and much of the "science may still be developing." [D.E. 57] 25.

Plaintiffs certainly had the right to file their claims without "waiting for further development of the science." Id. But plaintiffs must accept that ongoing research concerning PFAS compounds will affect the viability of their claims. Thus, the third factor weighs in favor of granting defendants' motion for entry of a Lone Pine order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

The fourth factor requires the court to consider the availability and use of other procedures under the federal rules or statutes that would accomplish the same goals as the proposed Lone Pine order. See In re Digitek, 264 F.R.D. at 256; McManaway, 265 F.R.D. at 387–89; In re Vioxx, 557 F. Supp. 2d at 744–45. "Multiple courts have found that Lone Pine orders are appropriate only where other available procedural devices such as summary judgment, motions to dismiss, motions for sanctions and other similar rules are insufficient to address the issues at hand." Abner, 2014 WL 5817542, at *4. Moreover, "multiple courts have interpreted Federal Rule of Civil Procedure 16 to confer" the power to issue a Lone Pine order in "complex litigation." Id. at *2.

12

Defendants argue that allowing the cases to advance to summary judgment under Federal Rule of Civil Procedure 56 would not suffice "to address the needs of the case[s] because it would come only after a particularly burdensome discovery process and the expense of significant time, money, and resources by both the [c]ourt and the parties." [D.E. 56] 16. Specifically, defendants argue that before the parties "could even get to the Rule 56 stage, they would be forced to spend significant time and resources collecting medical records, producing and analyzing those records, and resolving any discovery-related disputes," in addition to conducting at least 60 depositions of the individual plaintiffs. Id. Defendants also argue that the parties would then need to "serve opening and rebuttal expert reports, and then depose each other's experts and [p]laintiffs' treating physicians . . . . Only after all of this, would the [p]arties be able to file Rule 702 and Rule 56 motions." Id. Defendants estimate this process could take "years to complete and cost significant time and resources." Id. At bottom, defendants argue that despite the parties' significant pre-trial coordination, no adequate means of efficiently advancing these eight related cases exists within the Federal Rules of Civil Procedure.

Plaintiffs respond that the defendants have not exhausted the case tools available under the Federal Rules of Civil Procedure. See [D.E. 57] 21–22. Specifically, plaintiffs argue that defendants have "served no written discovery . . . , have sought no inspection of [p]laintiffs' residences, have sought no independent medical examinations . . . , and have sought no depositions of [p]laintiffs nor any other witnesses." Id. at 22. Moreover, plaintiffs argue that they "have not obstructed nor failed to comply with any formal discovery requests and have voluntarily agreed to complete sworn/verified" facts sheets as to each plaintiff. Id. Plaintiffs also argue that defendants have not shown that the case management tools available under the Federal Rules of Civil Procedure "have been exhausted or cannot accommodated the parties' needs." Id.

Given the numerous plaintiffs and claims and that plaintiffs have chosen to pursue individual actions, proceeding along the usual discovery path will unduly burden the defendants and the court and will not permit these eight related cases to progress efficiently. The court rejects plaintiffs' argument that defendants have not exhausted the tools available under the Federal Rules of Civil Procedure. See Abner, 2014 WL 5817542, at *4. Here, the available procedural tools "are insufficient to address the issues at hand." [D.E. 56] 15 (quotation omitted). Thus, the fourth factor weighs in favor of granting defendants' motion for entry of a Lone Pine order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

The fifth factor requires the court to consider the type of injury alleged by plaintiffs and its cause. See In re Digitek, 264 F.R.D. at 256; McManaway, 265 F.R.D. at 387–89; In re Vioxx, 557 F. Supp. 2d at 744–45. "Lone Pine orders are regularly used in, and were specifically created for, cases alleging mass environmental contamination." Abner, 2014 WL 5817542, at *5.

Defendants argue that plaintiffs' claims fall within the heartland of cases in which courts typically enter Lone Pine orders, and that such cases "routinely require proof of general, specific, and medical causation." [D.E. 56] 17. Defendants argue that all 60 plaintiffs "allege that they have suffered specific personal injuries and/or property damage caused by" defendants alleged PFAS contamination "over the course of decades." Id. Defendants also contend that this court, elsewhere, has recognized that such claims require proof of both general and specific causation. See id. (collecting cases). Thus, according to defendants, "the law already requires [p]laintiffs to furnish causal evidence to support their claims. Defendants' [m]otion simply asks that this evidence be provided now, before the [p]arties and the [c]ourt expend limited resources on litigating these cases." Id. at 18.

In opposition, plaintiffs argue that defendants' motion amounts to an improper, burdensome, and premature request. See [D.E. 57] 23–24. Plaintiffs also argue that defendants'

14

proposed Lone Pine order "[is] unreasonable and inappropriate for this case." Id. at 24. Specifically, plaintiffs argue that the defendants seek to "force [p]laintiffs to prove their entire case via detailed and costly expert reports." Id.

These eight related cases fall within the category of cases in which courts typically issue Lone Pine orders. See, e.g., Acuna, 200 F.3d at 340; Burns, 2007 WL 2811533, at *3; Baker, 2007 WL 315346, at *7; In re Rezulin Prods. Liab. Litig., 441 F. Supp. 2d 567, 569–70 (S.D.N.Y. 2006). Moreover, because these eight related cases require proof of both specific and general causation, defendants' proposed case management order requests information that plaintiffs must eventually produce. See, e.g., Nix v. Chemours Co. FC, No. 7:17-CV-189, 2023 WL 6471690, at *8 (E.D.N.C. Oct. 4, 2023) (unpublished); Rhyne v. United States Steel Corp., 474 F. Supp. 3d 733, 743 (W.D.N.C. 2020); Doe v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006). Furthermore, the court rejects plaintiffs' argument that defendants seek to force plaintiffs "to prove their entire case via detailed and costly expert reports." See [D.E. 57] 24. Defendants seek a Lone Pine order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation. In other words, defendants seek merely "to confirm whether [plaintiffs] anticipate having some evidence of" causation and personal injury. [D.E. 58] 10; see also [D.E. 55-1] 2–3. Plaintiffs have failed to establish that defendants' motion is unduly burdensome or prejudicial. Thus, the fifth factor weighs in favor of granting defendants' motion for entry of a Lone Pine order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

Having considered all the relevant factors, the court finds these eight related cases warrant a Lone Pine order to facilitate case management and to avoid undue burden to the defendants and the court. Accordingly, the grants defendants' motion for entry of a case management order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation.

15

See [D.E. 55]; Fed. R. Civ. P. 16. The court, however, will not immediately enter defendants' proposed case management order. See [D.E. 55-1]. Instead, the court will provide the plaintiffs with a period to submit any proposed revisions to the defendants' proposed case management order. Plaintiffs shall file their proposed revisions not later than May 30, 2025. Defendants may reply not later than June 6, 2025. Alternatively, the parties may submit a joint case management order not later than May 30, 2025.

II.

In sum, the court GRANTS defendants' motion for entry of a case management order requiring plaintiffs to submit expert declarations confirming their injuries and proximate causation [D.E. 55]. Plaintiffs SHALL file any proposed revisions to defendants' proposed case management order [D.E. 55-1] not later than May 30, 2025. Defendants may reply not later than June 6, 2025. Alternatively, the parties may submit a joint case management order not later than May 30, 2025.

For ease of administration, and because the defendants have filed this motion in each of the related cases, the court will issue a single order in case no. 7:23-CV-1114. The clerk SHALL enter a copy of this order in each of the following cases and the plaintiffs SHALL comply with its requirements: Beverly Brown, et al., v. Corteva, Inc. et al., (7:23-CV-1409); Page Ritchie, et al., v. Corteva, Inc., et al., (7:23-CV-1465); Berdie E. Boone, et al., v. Corteva, Inc., et al., (7:23-CV-1473); Amy Godwin, et al., v. Corteva, Inc., et al., (7:23-CV-1500); Devon Bartholomew, et al., v. Corteva, Inc., et al., (7:23-CV-1592); Steven Aaron, et al., v. Corteva, Inc., et al., (7:23-CV-1599); Constance Baker, et al., v. Corteva, Inc., et al., (7:23-CV-1666).

SO ORDERED. This 14 day of May, 2025.

JAMES C. DEVER III
United States District Judge